IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| EBONY CAPRICE MILLER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:21-cv-00266 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MARIEA LEFEVERS, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

Plaintiff Ebony Caprice Miller ("Miller"), a prisoner proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 alleging discrimination on the basis of her sexual orientation by Defendant Warden Mariea LeFevers ("Warden LeFevers"). This matter is before the court on Warden LeFevers's motion to dismiss for failure to state a claim. (ECF No. 13.) For the reasons discussed below, the court will grant Warden LeFevers's motion and dismiss this action.[1]

I.

Miller is currently incarcerated at Fluvanna Correctional Center for Women ("Fluvanna") and was incarcerated there at all times relevant to this proceeding. Miller asserts that she is involved in a relationship with Alasia Fletcher, another female inmate at Fluvanna. Miller asserts that Warden LeFevers discriminated against her and "abused her authority by making [Miller] and Alasia Fletcher . . . keep separates." (Compl. at 3 [ECF No. 1].) Miller alleges that requiring her and Fletcher to stay apart is in violation of Fluvanna "policy or

---

[1] After reviewing the record, the court finds that oral argument will not assist the court in its resolution of these motions.

procedure that apply to the keep separate[s]," and that Miller and Fletcher "do not meet the requirements to be keep separates." (*Id.*) Miller alleges that she and Fletcher had never received a disciplinary charge while together, never "had to be removed from each other," and have never gotten "into a fight with each other." (*Id.*) Miller alleges that requiring her and Fletcher to keep separate from each other "is a violation of [her] prison and civil rights." (*Id.*)

Miller asserts that this situation triggered "serious mental health issues." She indicates that she has been "extremely depressed," and that the situation has caused her to "get into more trouble then [*sic*] normal." (*Id.*) Miller also alleges that Fletcher has attempted suicide as a result of being apart from Miller. As a remedy, Miller seeks to have the "keep separate removed and to be compensated for [her] extreme emotional distress." (*Id.* at 2.)

## II.

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

## III.

Insofar as Miller's allegations can be construed as a claim arising from her First Amendment freedom of association, Warden LeFevers argues that Miller has failed to state a claim. The court agrees.

While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large, . . . incarceration does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). "And even those rights that *do* survive incarceration are afforded less protection by the Constitution than the rights of free citizens." *Desper v. Clarke*, 1 F.4th 236, 243 (4th Cir. 2021).

"The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton*, 539 U.S. at 131. It is also well-established that "there is no constitutional right to prison visitation, either for prisoners or visitors," and that "[f]reedom of physical association is inconsistent with an incarcerative penal system." *White v. Keller*, 438 F. Supp. 110, 115 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir. 1978); *Desper*, 1 F.4th at 243–44 (quoting *Williams v. Ozmint*, 716 F.3d 801, 806 (4th Cir. 2013)) (cleaned up) ("[N]o case from [the Supreme Court] or [the Fourth Circuit] clearly establishes a constitutional right to visitation in prison grounded in the First . . . or Fourteenth Amendments."). The Constitution, moreover, does not guarantee conjugal visitation privileges to incarcerated persons. *See, e.g.*, *Turner v. Safley*, 482 U.S. 78, 95–96 (1987); *Hernandez v. Coughlin*, 18 F.3d 133, 137 (2nd Cir. 1994); *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir. 1975); *Saleem v. Helman*, 124 F.3d 205 (7th Cir. 1997); *In Re Anderson*, 296 F. App'x 347, 348 (4th Cir. 2008).

Miller alleges that she and Fletcher are not able to associate with each other physically, that the requirement to stay apart is in violation of Fluvanna "policy or procedure that apply to the keep separate[s]," and that Miller and Fletcher "do not meet the requirements to be keep separates."[2] As there is no First Amendment right to freedom of physical association or

---

[2] Insofar as Miller's allegations may be interpreted as a due process claim, a violation of prison procedure does not automatically rise to the level of a constitutional violation. "Alleged violations of due process in the deprivation of a protectable interest are to be measured against a federal standard of what process is due and that standard is not defined by state-created procedures, even when those state-created procedures exceed the amount of process otherwise guaranteed by the Constitution." *Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990). As to a particular security classification, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). As such, the court concludes Miller has failed to state a due process claim for Warden LeFevers's alleged violation of prison policy and procedure.

conjugal visitation for incarcerated persons, it follows that Miller has no constitutional right to have an intimate relationship with another inmate on her terms. The court therefore concludes that Miller has failed to state a claim under the facts alleged. *Accord In re Anderson*, 296 F. App'x at 348; *Desper*, 1 F.4th at 243–44.

## IV.

Insofar as Miller claims she is being unlawfully housed on the basis of her sexual orientation, Miller has failed to state a claim. The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person . . . the equal protection of the laws." U.S. Const., amend. XIV, § 1. "[T]o succeed on an equal protection claim, a plaintiff must first demonstrate that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 82 (4th Cir. 2016) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). In the prison context, once the threshold showing is made, the court must determine if the disparity in treatment is reasonable in light of the unique—and well-founded—security concerns within the prison system. *See Morrison,* 239 F.3d at 655.

In the penological context, the scrutiny applied is lower and a "prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Morrison v. Garraghty*, 239 F.3d 648, 655 (4th Cir. 2001). "This more deferential standard applies even when the alleged infringed constitutional right would otherwise warrant higher scrutiny," such as with race-based classifications, which are held to

an even higher standard than sex-based classifications. *Id.* When a court considers the constitutionality of a regulation, it weighs four factors: "(1) whether there is a valid, rational connection between the policy and the penological interest; (2) whether an alternative means of exercising the right remains open to prison inmates; (3) the impact accommodation of the asserted right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests." *Id.*

Housing prisoners based on their sexual identity is rationally related to a legitimate penological interest in preventing violenceand bias-motivated attacks from other prisoners. *See Veney v. Wyche*, 293 F.3d 726, 734 (4th Cir. 2002) ("Thus, in the prison environment, where inmates live in close quarters and their movements are restricted, prison officials reasonably may conclude that more proactive measures are required to protect homosexuals from bias-motivated attacks."); *Fletcher v. LeFevers*, No. 7:21CV00231, 2021 WL 2953678, at *4 (W.D. Va. July 14, 2021) ("Moreover, to the extent that she is alleging that she is treated differently in terms of who she can be housed with because of her sexual orientation, housing assignments in prisons that take into account sexual orientation have previously been upheld by the Fourth Circuit in this very context."); *Jones v. Union Cty. Sheriff's Off.*, No. 318CV00509KDBDCK, 2019 WL 5692753, at *5 (W.D.N.C. Nov. 4, 2019), *aff'd sub nom. Jones v. Cathey*, 854 F. App'x 543 (4th Cir. 2021) (affirming the validity of disparate treatment of transgender prisoners for penological reasons under the *Veney* framework). The Fourth Circuit concluded that the factors all weigh in favor of allowing prisons to regulate prisoners based on sexuality because

"there is no ready alternative to the prison's policy," and doing otherwise "would place a greater burden on guards[.]" *Id.* at 735.

Accepting as true all that Miller has alleged, she has failed to state a viable equal protection claim; housing inmates based on their sexual identity is rationally related to a legitimate penological interest.

## V.

Because Miller's Complaint fails to state a claim the court will grant Defendant's motion to dismiss.

The clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 2nd day of December, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE